Attorney General Paul Trena. May it please the court, your honors, good morning. My name, once again, is Paul Trena. I represent, I'm from the law firm of Ingstam Lipscomb Black, and I represent the plaintiff intervenors, Rosenbaum Williams, Compass Point Partners, as well as a class of LPW, we call them litigation warrant holders. We're here today because the Court of Federal Claims erred when it denied our motion to intervene, and when the court found that the bankruptcy court had already made the decision. What we claim has erred here today is the things that were not considered by the Court of Federal Claims, and that is the purchase and assumption agreement becomes a very important agreement in this case. And the reason it becomes an important agreement is, first of all, with regard to the timing of it. The purchase and assumption agreement between the FDIC as well as J.P. Morgan was executed one day before WMI went into bankruptcy. Counselor, I have a fundamental question, and that is, doesn't the warrant agreement, and I'm looking at A1041, doesn't it state that the bank has a sole and exclusive jurisdiction over litigation? And doesn't that preclude you from intervening in this case? It does not, Your Honor, and here's the reason why. We are what's called intended beneficiaries of that asset. An intended beneficiary, when you take a look at the warrant agreement as well as the amended warrant agreement, what was intended, what was the bank supposed to do with that asset? In other words, what was created out of the warrant agreement was an interest in the litigation warrant holders in that asset. And I will agree with you, Your Honor, that when you're taking a look at the bank and the corporate structure that was organized for purposes of the litigation warrant holders to get the asset, whether that be by stock or whether it be by cash, but the litigation warrant holders held at that point, what they reasonably believed is what? An intended beneficiary of that litigation asset. Is that a reasonable belief? Of course it was. And I say that because the entire purpose of the warrant agreement was set up to benefit who? The litigation warrant holders. It certainly was not set up for the purpose of protecting the government, and it certainly was not set up for the purpose of protecting the bank, and nor was it set up for the purpose of protecting J.P. Morgan. Let me see if I understand this. Again, it's a follow-up to Judge Reina's question. Suppose that you have a cause of action and you sell that 50% of the cause of action in effect to me by saying that whatever your recovery is, I'll get 50%. You proceed with the cause of action in court. The court would enter a judgment in favor of you, correct? Not in favor of you and me. I believe that that is correct. Right. And then later, if you refuse to pay me my 50%, I would sue you in another action, correct? That is possible, Your Honor. Well, I mean, that would be my remedy. So why isn't that this case? If I'm understanding your question, Your Honor, it means, really, why can't the interveners, the LTW warrant holders, simply bring an action in another… But without regard to and without the need to decide any of those downstream questions, why is it this question of whether the litigation warrant holders are entitled to 85% of something, why isn't that a question which is outside the scope of the dispute in this case? Because it is a separate contract, a right deriving from a separate contract from the contract that's in litigation. I think… As in my hypothetical case. I appreciate that, Your Honor. Let me try to address that. I believe, really, that there is two reasons for that. The first is the litigation that is going on right now in the Court of Federal Claims. And the reason that I bring that up is because the dispute that is going on right now is based upon a motion to dismiss that's been brought by the government against J.P. Morgan. And the issue there that is being litigated is who has the right to the anchor judgment. Now, that becomes very, very important with regard to the litigation warrant holders as interveners in this action. And the reason that it becomes important for, we'll say, a third party to intervene at this time is because we believe, based upon the action of J.P. Morgan as well as the government, that any decision that is going to be made in the Court of Federal Claims will impede or impair our interest forever. In your example, Your Honor, you look at it as a difference in the hypothetical that's close to me. You look at it as a separate action that can be brought far and apart from the original action. The problem is this. We may not have that right. In fact, I don't think that we will once the Court of Federal Claims makes the decision who owns the anchor litigation. You might not want to make that concession. You might at some point. I agree, Your Honor, but it seems to me that the importance of us having a seat at that table almost demands our right to be there. And this is the most appropriate time. The most appropriate time is when there is going to be a decision that's going to be made by the Court of who owns the litigation. Right now we have an action that has been brought against the government to intervene in the Court of Federal Claims. The property at issue, the anchor litigation, which we are claiming a right to, and I think a rightful right. It is ours. We were the intended beneficiaries of that. We didn't have a beneficial interest in the mechanism of payment. We lost that. At least that's the argument that the government would make in Anchor Bank. But we didn't lose that because the purchase and assumption agreement really preserved that for us. The purchase and assumption agreement created a vehicle so the asset, which we had a beneficial interest in, was transferred to a third party. Maybe transferred, maybe not. That's the issue right now going on before the Court of Federal Claims. I would agree with this Court that if the FDIC and J.P. Morgan was not involved, and that if this were just a corporation that went bankrupt, and with it going bankrupt, its bank or thrift went bankrupt too, and the FDIC and J.P. Morgan was not involved, we would be like every other shareholder slash warrant holder, but that's not what happens. At every time when the litigation warrant holder's rights were going to be affected, in other words, when there was a merger or a successor of another company, what happened? The rights of the litigation warrant holders were always protected. In other words, they had an interest. It wasn't an interest in the mechanism of how they were going to be paid. It was an interest in the litigation and the judgment. Now, the issue is, the day before that they went bankrupt and the purchase and assumption agreement was assigned or transferred, that asset, assuming it's been assigned or transferred, did we all of a sudden lose a right because the mechanism of which our payment would change? And we're saying no, because the right that we hold was the right in the litigation and the asset, and that was sold or transferred anyway prior to the time of bankruptcy. Now, there's a couple cases that I want to bring to your attention because when you're reading the brief, I think you get an idea. Let me, again, follow up again. What party, which of the various entities that are out here and play here, is the entity against which you have a contractual right to recover? I think it's two. All right. I think it's the government, and I think it's J.P. Morgan. And the reason that, or Anchor Bank, however you want to characterize it, and the reason that I say that is this. If the court of federal claims makes the determination that the purchase and assumption agreement transferred the asset to J.P. Morgan, I think I would agree with the court that our cause of action then would be against J.P. Morgan. Okay. However, that determination hasn't been made yet, and that's why I say that we still have an action. If the asset, the Anchor Bank litigation and the judgment stays with the government, then we have an action against the government. So that's why I said J.P. Morgan. So either way, you have a contractual action against one or the other. That's correct, Your Honor. So then how are you going to be prejudiced by either decision in the court of federal claims? Yeah, and I think it gets back to my earlier point. I don't believe neither of the parties are there representing our interests. They're not representing our interests. Well, that's fine, but there's going to be a resolution between the two of them, I take it. I'm not sure I completely understand all of the nuances of the current pending proceeding in the court of federal claims, but I would assume there's going to be a resolution in favor of one or the other of those two parties, and you're telling us that you will have a right against one or the other of those two parties, depending on who is determined to be the owner of the litigation. And why isn't that a right that's not prejudiced by however that gets resolved? I appreciate that because I think how that issue is going to be resolved at the court of federal claims, Your Honor, is not just who has a right to the asset. Right. It's going to be who has a right to that ad asset exclusive of anybody else. Because one of the things that's being argued right now by J.P. Morgan is this. We got the asset. We got it free and clear, free and clear of any encumbrances at all. If that's the argument and accepted by the court of federal claims, your question to me is how we would be prejudiced, because we don't have a court to go into, or if we do, Your Honor, it would have a race judicata effect from what the court of federal claims decides. That's why we have to be there. Why don't we hear from the other side? I'm sorry. You're into your rebuttal time. Oh, I'm sorry. That's quite all right. Thank you very much. I yield. Okay. We're going to begin with Mr. Toter. We're running your clock separately, so this is your time. May it please the court. The court should affirm the decision of the court of federal claims denying the motion to intervene filed by the litigation track and warrant holders. The basis for the court of federal claims' decision was that the litigation track and warrant holders' motion to intervene amounted to a collateral attack on the decision of the bankruptcy court, and that court does not have jurisdiction to consider such claims pursuant to this court's Alice T. Ard decision. That decision was correct because the substance of the claim made by the interveners is that their warrants give them a direct interest in the litigation. They do not merely give them an equity interest in Washington Mutual's holding company, Washington Mutual Inc., or WMI. That was the very subject of the bankruptcy court's decision that the court of federal claims cited. There was a trial. There was a decision that the warrants were an equity interest. They were not a direct interest in litigation itself or a debt interest that would give them some additional rights vis-à-vis the other creditors. The basis for the warrant holder's argument is that there were some arguments that were considered in the bankruptcy court, and there are different things that the court might have considered that they felt the bankruptcy court didn't properly consider. But that was a matter for the bankruptcy court. That was not a matter for the court of federal claims to re-argue or re-weigh the bankruptcy court's decision. There was also a remedy. Has that decision been appealed to the district court? Not to our knowledge, but that is the remedy that they would have. And as the court of federal claims explained, based on the Supreme Court CELOTEC's v. Edwards decision in 28 U.S.C. 158, if the warrant holders disagree with the bankruptcy court's decision, their remedy is to appeal to the district court and then to the circuit court, in this case the Third Circuit. They also raised questions, well, this claim isn't in the bankruptcy court's jurisdiction. Their claim is that this global settlement agreement is dealing with the status of the anchor litigation. They're claiming that that litigation was not part of the bankruptcy estate. That was transferred as part of the purchase and assumption agreement between the FDIC's receiver and J.P. Morgan. Our position actually is that that was the contract that deleted it, just that it was one of the assets not transferred. That's the basis for our dispute with J.P. Morgan that's pending in the court of federal claims. But that doesn't help the warrant holders here because even if they disagree with the bankruptcy court's ruling as to what its jurisdiction was, their remedy is to appeal to the district court. It's not to mount a collateral attack in the court of federal claims. Now, let me... Again, the number of different entities that are floating around here is a little confusing, but one of the things that the bankruptcy judge ruled on at the very end of her opinion was to say that the anchor litigation is the property of the estate, i.e. WMI's estate, that's the bank. So do you... Is that inconsistent with your position? It is inconsistent with our position. It's also inconsistent with J.P. Morgan's position in the court of federal claims. We also believe it's dicta to the ruling because the ruling is what is the nature of these warrants. The ruling was these warrants are an equity interest. They're not a debt interest. So we do disagree with that aspect of the decision, but it's a disagreement shared by ourselves and J.P. Morgan, and neither side has cited that as a basis to disrupt the proceedings in the court of federal claims. Right. Okay. And, again, if the warrant holders wish to raise a disagreement based on that reason or any other reason in the bankruptcy court's decision, the remedy is appeal to the district court. It's not to file a collateral attack in the court of federal claims. Separately from the court's proper denial of the motion to intervene based upon the bankruptcy court judgment, there are other reasons why the court of federal claims would not have jurisdiction over the specific claims raised by the warrant holders. The most fundamental of these is their claims to be a third-party beneficiary is to a contract between the FDIC acting in its capacity as receiver of the failed bank, Washington Mutual Bank, and J.P. Morgan in the Purchase and Assumption Agreement, September 25, 2008. The FDIC acting as receiver is not considered the United States for the purpose of jurisdiction of the court of federal claims pursuant to the O'Melveny and Atherton decisions of this court. Therefore, to the extent that they believe they have a contractual action against the FDIC as receiver, the court of federal claims is not the appropriate venue for such an action. They wish to file a claim in the receivership or sue J.P. Morgan based on who gets the money. Those are options, although under the class decision, the FDIC as receiver would be moving money from one pocket into the other pocket. It wouldn't be appropriate to pay a judgment in that situation, but in any case, their remedy of seeking to sue the government in the court of federal claims is not the correct remedy. Furthermore, some of their substantive claims are not appropriate claims to the court of federal claims because they sound in torque. They bring a cause of tortuous interference with economic advantage. That's a torte claim, not part of the court's jurisdiction. Their takings claim also is based upon the FDIC as receiver. Again, not a court of federal claims jurisdiction. Even if the court were to reach the question of whether they were in fact a third-party beneficiary, there's nothing in the purchase and assumption agreement that we're aware of that would indicate any intention to benefit the warrant holders. In fact, given that there's no mention of their claim under the FlexFab decision of this court, in order to be a third-party beneficiary, the contract needs to indicate on its face an intent to benefit a third party directly. We are aware of nothing in the purchase and assumption agreement of September 25th that would support such a conclusion. With respect to permissive intervention, again, our reasons to object to the intervention were based upon the court of federal claims' lack of jurisdiction. If for some reason the court were to reach those, we would not object to the court denying intervention for the fact that it's not the same contract. The underlying contract is breach of contract in 1989. These are warrant holder claims based upon warrants executed in 2000 and actions in the bankruptcy in 2008. But we think that the better reason would be for the court's lack of jurisdiction, either to review a decision in the bankruptcy court or because their claims are against the FDIC in its capacity as receiver. The argument that... One of the arguments that Mr. Treanor makes this morning is that the consequences of a decision in the court of federal claims as to who owns the litigation would be binding on his clients as a matter either of claim or issue preclusion, probably issue preclusion, actually. Do you agree with that in another action? Not necessarily because the... Because they weren't a party to this. They're not a party to this case. So you would concede that if that would not bind them, then they would be free to argue to the country. If ultimately J.P. Morgan is deemed to be the rightful owner and gets the money, they can sue J.P. Morgan. And they wouldn't be subject to collateral estoppel or... Not to our knowledge. ...preclusion. All right. For those reasons, we respectfully request that the court review a decision in the court of federal claims. Mr. Fontaine? Fontaine, yes, your Honor. Can I ask the same question of you that I just asked Mr. Tudor, whether there would be any collateral estoppel or claim preclusion argument made, or makeable in a separate action against whoever ends up winning in the court of federal claims on the question of who's owned the courts of action? Yes, your Honor. And I share the government's response. They're not a party to this case, so it could not be binding on them. But more practically, the money will be sitting somewhere by that point. Either the money will have been paid to J.P. Morgan as successor and interest anchor, or it will remain with the government. And so there will be a practical effect, and they can, as they say, follow the money. All right. But you're not going to go into court and say, oh, you missed your chance? No, sir. Okay. To answer another question you had, Judge Bryson, yes, the bankruptcy court judgment on this issue has been appealed. It's pending as civil matter number 12-272 in the District of Delaware. It's under advisement now. The court has not ruled on that, but it has been appealed in that proceeding. Is Anchor Savings a party to that appeal? I don't know, Judge Ranney. J.P. Morgan was a party in the underlying bankruptcy, and there were many issues in the bankruptcy beyond the Anchor case. And I do not know. I didn't represent J.P. Morgan in that case, and so I do not know whether they're participating in the appeal or not. But they were a party in the underlying bankruptcy case. There are two points I'd like to follow up on from the argument that's gone below, that's gone before. And the first goes to the questions about how does this prejudice the interveners? And there is no prejudice. They are free in some other proceeding to pursue whoever they think they have a contractual obligation from to get a portion of the judgment. But as Judge Rainer pointed out, the warrant agreement makes crystal clear that 100% of the judgment proceeds in this case go to the plaintiff. Whether the plaintiff or some successor in interest to the plaintiff has a contractual obligation to remit a percentage of those judgment proceeds to the interveners can be litigated in another proceeding. It can't be litigated here if it's a claim on the FDIC, then the Court of Federal Claims would lack jurisdiction for the reasons that Mr. Toder pointed out. If it's a claim against J.P. Morgan, then certainly the Court of Federal Claims doesn't have jurisdiction because J.P. Morgan is obviously not the United States. So our main point is that there is no, whatever interest they have are not impaired by the outcome of the proceedings below. To our mind, the only issue left is the final resolution of the damages amount. This court affirmed the original damages award, remanded for consideration of potential additional damages to be paid by the government. As far as we're concerned, that's the issue that's left. The government has brought its motion to dismiss based on a dispute about whether the P&A agreement did in fact transfer the anchor judgment to J.P. Morgan or whether it resides with the FDIC. But as Judge Bryson, you pointed out, whatever the outcome of that, the interveners are not impaired in their ability to proceed against whomever the Court of Federal Claims determines is the recipient of the judgment. So there's no impairment to the interveners. Couple that with the extreme delay that would be imposed on this case that has already been pending for 19 years. This is not simply a matter of the interveners appearing so that the judgment can be directed to them. This has been brought as a class action. So as an initial matter, we would have class verification proceedings. There would be motions to dismiss their claims. There would be discovery as to what was the effect and intent of all these transactional documents out there. There would be summary judgment motions. There would be a trial. There would be an appeal. This case will go on for years more beyond what it has already gone on. And timeliness is an essential prerequisite of a motion under either Rule 24A or Rule 24B. And the timeliness does not just pertain to the plaintiff's delay in bringing their motion to intervene. We submit they did delay. But it also relates to the stage of the proceedings that the underlying case has already reached. And it relates to the additional new issues that the interveners would bring. We've been up to this court already. We're back down on remand. We've been on remand for three years. The interveners proposed to come in on behalf of new plaintiffs against a new federal agency that has never been involved in this case asserting a breach of a contract that was not formed until after the trial court's judgment in this case. The array of new issues would prolong this case by, again, by multiple years. And there's absolutely no reason to do that given that they have adequate alternatives outside the scope of this litigation to pursue their claims. Unless the court has any further questions, I'm prepared to leave the rest to our briefs. Thank you. Mr. Train, you have a few minutes left. Let me address very quickly the central issue, I think, that has been raised by the court and a concern. And that is whether we will be precluded as litigation warrant holders or be impeded, our rights will be impeded, from bringing a different action in a different court. And I've advocated here today that I believe that they will be. And I believe that the evidence that has been offered in the underlying appeal in the underlying court supports that fact. And the reason I believe that is because under the Purchase and Assumption Agreement under 2.1, there's a section there, and this was a Purchase and Assumption Agreement that was executed between the FDIC and J.P. Morgan that conveyed certain assets. And I think it's pretty clear at this point in time that one of the assets that was conveyed was the anchor litigation. And the question becomes, who has a right to that? And when it was conveyed at the time, prior to the time of bankruptcy, it conveyed that asset with all liabilities, liens attached. It's really important because then two years later in the bankruptcy court, the FDIC comes in, J.P. Morgan comes in, and they execute a General Settlement Agreement that says exactly the opposite of that. In the General Settlement Agreement, and I'll cite the page for you, it's A208, it talks about the anchor litigation. And it doesn't say, hey, we transfer the anchor litigation pursuant to all rights and liabilities like it did in the Purchase and Assignment Agreement. Instead, it says something entirely different and opposite. Whoever gets the anchor litigation gets it free and clear of liens, claims, interests, encumbrances of any person, including without limitation, any liens, claims, interests, and encumbrances of holders of litigation tracking warrants. That is exactly an opposite to what was said two years earlier when the litigation, anchor litigation, was transferred to J.P. Morgan. Now, why does that affect our rights? Because what is happening right now in the Court of Federal Claims on the motion to dismiss brought by the government is they're arguing these documents and the effect of these documents. We feel that it would have race judicata effect, and I think it is... I think your opposing counsel have just both acknowledged that it wouldn't be preclusive. Any resolution of that issue is as to whether your interests were eradicated by a contractual agreement between two parties who are not protecting your interests. Right? I mean, why isn't their acknowledgement in open court that that is not a position that they would take? Why doesn't that give you sufficient satisfaction that that's not a problem for you? It does, Your Honor. It gives me satisfaction... It does? I'm sorry, I didn't hear. It does. Not as much as I would like, because I would like to be at the table to make sure that happens at the Court of Federal Claims. I would like our clients... But the preclusive effect is something that doesn't happen at the Court of Federal Claims. That happens downstream, assuming that you get a result out of the Court of Federal Claims that you don't like. That's right. But that's not a result that you're bound by, I think. And I take it that your opposing counsel said that's right. It makes me feel better. Okay. Thank you very much. Thank you. The case is submitted, we think.